CASE 64—PROCEEDING BY THE COMMONWEALTH AGAINST
     HENRY GLOVER TO HAVE HIS PROPERTY AS-
     SESSED FOR TAXATION—March 9, 1909.

## Commonwealth v. Glover

Appeal from Jefferson Circuit Court, Common Pleas Branch (2 div.)

SAMUEL B. KIRBY, Judge.

From the judgment plaintiff appeals.—Affirmed.

1. Taxaxtion—Proceedings for Assessment of Omitted Property.
   —The proceeding to assess omitted property under St. 1909,
   Section 4260, instituted by the filing of a statement of the
   omitted property by a revenue agent, is a proceding on behalf
   of the commonwealth, and the commonwealth is the real party
   in interest, although the revenue agent if successful, obtains
   a compensation for his efforts, and the proceeding is neither
   an action, nor a special proceeding as defined by the statute,
   but is simply a supplemental means for assessing omitted
   property.
2. Statutes—Strict Construction—Statutes Giving Right of Action
   —Where a statute gives a right or provides a remedy, the
   manner provided in the statute whereby the right may be
   acquired must be strictly followed
3. —Taxation—Assessment—Actions to Compel Assessments—
   Verification of Statement—Under St. 1909, Section 4260, mak-
   ing it the duty of the revenue agent of a county to file a

Commonwealth v. Glover.

statement in the county clerk's office containing a description and value of property proposed to be assessed which has 'been omitted from the assessment roll, it is not necessary that the agent verify the statement.

4. Pleading—Verification—Necessity—The question what pleadings should be verified is one that lies solely within the legislative discretion.

5. Taxation—Assessment of Omitted Property—St. 1909, Section 4260, providing that the revenue agent of a county shall file a statement of property omitted from taxation, and that the statement shall contain "a description and value of the property proposed to be assessed," is mandatory.

6. Statutes — Construction — Unambiguous Statutes.—Where the language of a statute is unambiguous, it is not subject to interpretation nor construction, but must be accepted and enforced as it is written.

7. Taxation—Assessment—Actions to Compel Assessment—Statement of Omitted Property—"Household Effects"—"Library"—"Pictures"—"Jewelry."—St. 1909, Section 4260, makes it the duty of a revenue agent of a county to cause to be listed for taxation all property omitted by the assessor and other taxing officer, and provides that he shall file a statement of property omitted from taxation, and that such statement shall contain "a description and value of the property proposed to be assessed." A revenue agent acting under such statute filed a statement of property belonging to a person named omitted from taxation, and such statement specified "accounts" of a stated value, 200 shares of railroad stock of a specified value in a number of railroads named, 250 shares of foreign industrial stock of a stated value in a number of corporations named, 25 traction bonds of a specified value in a number of railroad companies named, 20 railroad bonds of a stated value of a number of railroads named, 18 industrial bonds of local corporations of a stated value, 20 industrial bonds of a stated value in a number of corporations named, a certain amount of cash on hand, household effects, library, pictures, and jewelry, each of a value specified. Held, that the statement was sufficient as to the cash, household effects, library, pictures, and jewelry, as the "household effects" are universally understood to mean all the furnishings of one's residence, and "library" means such books or works of literature, science, art, or business as one may have in his residence or office, and "pictures" include all of the paintings, drawings, and sketches on the walls of one's residence or office building, and "jewelry" includes the rings, pins, and

other ornaments worn by the taxpayer, his wife, and other members of his family dependent upon him and for whose taxes he is responsible, but the statement as to the rest of the property was not sufficiently. definite to comply with the requirements of the statute.

M. J. HOLT for appellant.

1. Thousands of statements under Section 4241 of the Kentucky Statutes have been filed in the County Courts; many have been appealed to the Circuit Court and thence to this court. No court has yet required their verification. Such action or judicial interpretation constitutes a construction of the Statute contrary to the contention of appellee. Harrison v. Commonwealth, 83 Ky. 162; Commonwealth v. Gregory, 121 Ky. 256; New Haven Railroad Company v. Int. Commerce Com., 200 U. S. 401; United States v. Manos, 209 U. S. 339.

2. Section 4241 of the Kentucky Statutes is a drastic, summary and informal inquisitorial proceeding where a speedy hearing and just determination are the objects aimed at. Commonwealth by etc., v. Ryan's Exors., 31 Ky. Law Rep. 1070.

3. It is a proceeding where the county judge sits as a supplemental assessor to assess property which some other assessing officer or board has failed to assess. Commonwealth etc. v. Ryan's Exors., 31 Ky. Law Rep. 1070-1071; Baldwin v. Shine, 84 Ky. 513 to 515; Baldwin v. Hewitt, 88 Ky. 673; Commonwealth v. Adams Express Co., 30 Ky. Law Rep. 310; Cassidy v. Young, 92 Ky. 227.

4. It is a complete compendium in itself, providing for every step necessary to a final order of assessment without reference to the Code or any other section of the Statute. There is no provision as to verification. "The listing for taxation of omitted property is by special proceeding regulated wholly by statutory provision." Commonwealth etc. v. Ryan's Exors., 31 Ky. Law Rep. 1070-1071; Commonwealth v. Adams Express Co., 30 Ky. Law Rep. 310.

5. It is one "to search the conscience of the taxpayer and not the revenue agent." Belknap v. Commonwealth, 27 Ky. Law Rep. 476 to 478.

6. It is not an action within the meaning of Section 2 of the Code which provides "a civil action is a demand by pleadnigs in a court of justice for the enforcement of an alleged right of a plaintiff against a defendant." Commonwealth etc. v. Ryan's Exors., 31 Ky. Law Rep. 1070.

7. The "statement" is not a pleading within the meaning of Section 116 of the Code which provides: "Every pleading which this code requires to be written must be verified. The word

Commonwealth v. Glover.

"statement" is significant as used in Section 4241 as distinguished from the word "pleading" as used in the code. Commonwealth v. Adams Express Co., 30 Ky. Law Rep. 310; Commonwealth v. Ryan's Exors., 31 Ky. Law Rep. 1070-1071.

8. This being a revenue statute, must receive such construction as will preserve it for the purpose for which it was enacted. The clause as to the judgment and description must be construed so as to put the statute in operation—not to repeal it. Commonwealth etc., v. Central Consumers Co., 28 Ky. Law Rep. 1365.

HUMPHREY, DAVIE & HUMPHREY for appellee.

POINTS AND AUTHORITIES.

There are two main questions:

A. Can a revenue agent be required to verify his statement?

B. Were the motions to make more definite and certain the allegations in the statement and amended statement properly sustained?

1. Every proceeding by a revenue agent to have omitted property assessed is both judicial and ministerial. The court must first decide judicially whether the property in question is legally taxable, and, if so, must then act ministerially and assess it. Cassidy, Auditor's Agent, v. Young, County Judge, 92 Ky. 228; Louisville Water Company v. Clark, Sheriff, 94 Ky. 47, 52; Commonwealth of Kentucky v. Julia Churchill (decided January 8, 1909.)

2. Such proceedings are "civil cases," by the definition of the statute providing for them, and the terminology of the statute shows they are of a judicial nature. Act, Rev. & Tax, 1906, Art. XVI, Section 4 (Acts 1906, page 227).

3. "Civil cases" are either "actions" or "special proceedings," under the Code, Sections 1, 2 and 3; and by Section 732, 732 (34), the Code is made applicable to both "actions" and "special proceedings."

4. A proceeding by a revenue agent to have omitted property assessed being either an action or a special proceeding, the provisions of the Civil Code apply and the procedure, in conducting such cases, is in accordance therewith. This is shown both by the wording of the different acts and the procedure in cases already approved by this court. The terminology of the different acts and especially the present. Commonwealth v. Singer Sewing Machine Company, 14 Ky. Law Rep. 732; C. St. L. etc. Ry. Co. v. Commonwealth, 24 Ky. Law Rep. 2124 (115 Ky. 278); Sebree v. Commonwealth, 25 Ky. Law Rep. 121 (115 Ky. 736); Common-

wealth v. Citizens National Bank, 25 Ky. Law Rep. 2100; Commonwealth v. C. St. L. & N. O. Ry. Co., 32 Ky. Law Rep. 10; (118 Ky. 51); Commonwealth v. Southern Pacific Company, 32 Ky. Law Rep. 259; Citizens National Bnak etc. v. Commonwealth etc., 32 Ky. Law Rep. 1116.

5. This being an action or a special proceeding as defined by the Code, the provisions of which are applicable thereto, the revenue agent is required by its provisions to verify his petition. Code, Sections 116, 117.          :

1. The motions herein to require the plaintiff to make more definite and certain its statement, were properly sustained.

2. Because the present act requires such a description of the particular property claimed as omitted that the county court will be enabled to identify that particular piece of property from any other property, whether of the same or of a different kind.

3. The particular allegations in the present case are discussd separately, and are insufficient both as pleadings and for failure to give such a description as is required by the "identification clause" of Art. XVII, Section 4, Act of 1906 (Acts 1906, page 228.)

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Two questions are involved upon this appeal: First, the right of one who is proceeded against by an auditor's agent to require the agent to verify his statement; and, second, the right of the alleged delinquent to require that the auditor's agent shall make his statement so describe the property sought to be assessed that it can be identified.

Under the provision of section 4260 of the Kentucky Statutes (Compilation of 1909), which is as follows: "It shall be the duty of the revenue agent, and the sheriff in each county shall have like power and authority as the revenue agent for said county, to cause to be listed for taxation all property omitted by the assessor, board of supervisors, board of valuation and assessment or railroad commission, for any year or years. The officer proposing to have the property assessed

shall file in the clerk's office of the county in which the property may be liable to assessment, a statement containing a description and value of the property proposed to be assessed, and the value of the corporate franchise, if any, and the name and place of residence of the owner, his agent or attorney, or person in possession of the property, and the year or years for which the property is proposed to be assessed. The clerk of the court shall thereupon issue a summons against the owner to show cause before the next regular term of the county court, which does not commence within five days after service of such summons, why such property or corporate franchise, if any, shall not be assessed at the value named in the statement filed, but no judgment by default or otherwise shall be rendered against such alleged owner unless the statement filed shall contain such a description of the property sought to be assessed as will enable the court to identify it. The summons shall be executed by the sheriff of the county by delivering a copy thereof to the owner, if in the county; if not then to his agent, attorney or person in possession of the property. At the next regular term of the county court after the summons has been served five days, if it shall appear to the court that the property is liable for taxation, and has not been assessed, the court shall enter an order fixing the value thereof at its fair cash value, estimated as required by law; if not liable for taxation, he shall make an order to that effect, and the officer instituting said proceeding shall be liable on his official bond to the defendant for all costs incurred by him in defending said proceeding, and this shall apply to all courts to which said proceedings are taken. The judgment of the court shall have the same force and effect as the

judgment of the court in civil cases. Either party may
appeal from a decision of the county court to the cir-
cuit court and then to the Court of Appeals, as in other
civil cases, except that no appeal bond shall be re-
quired where the appeal is by the revenue agent or
sheriff. If the court shall decide that the property is
liable to assessment, and has not been assessed, the
clerk of the county court shall enter a judgment on a
book kept for that purpose assessing said property
and fixing the value thereof, and he shall certify the
assessment of said property and its value, together
with such other facts as may hereafter be required to
appear in said judgment by section 6 of this article,
to the Auditor of Public Accounts, and likewise to the
sheriff of the county, together with the amount of
penalty and costs of assessment, in order that the taxes
due the commonwealth and county may be collected,
with the penalties and costs. All persons owning
property which may be assessed as herein provided,
shall, in addition to the taxes, pay the costs of the
proceedings and a penalty of twenty per centum on the
amount of the state and county taxes due, except where
such property shall have been duly listed by the owner
thereof. The taxes, costs and penalties shall be col-
lected and accounted for as other taxes and penalties
are required to be collected, and by the same officers.
As compensation for his services in causing such prop-
erty to be assessed, the officer filing the statement
shall be entitled to the penalty of twenty per centum,
and the same shall be paid to him by the county tax
collector collecting said county taxes and penalty
thereon within thirty days after receiving same, and
by the officer of the state collecting or receiving state
taxes within thirty days after receiving same. The

county clerk shall enter all such assessments in said book to be kept for that purpose, showing the date of the assessment, the name of the person against whom the assessment is made, the location and quantity of the property assessed, and the value thereof; and the officer collecting the taxes shall, when the same is paid, notify the clerk of its payment, which payment shall be noted by the clerk opposite the entry of such assessment''—Holland L. Anderson, revenue agent for the state at large, filed the following statement against appellee in the Jefferson county court.

"Plaintiff, commonwealth of Kentucky, by Holland L. Anderson, duly appointed, qualified and acting revenue agent for the state at large, states that the defendant, Henry Glover, was on September 1, 1907, a resident of Jefferson county, Kentucky. Plaintiff states that the said defendant on September 1, 1907, was the owner of the following personal property, to wit: Cash on hand $600; cash on deposit in the bank $6,600; secured notes, $38,000; including lien notes, assigned to him and secured by mortgage on land in Woodford county $25,000, unsecured notes, $3,000; two hundred and sixty-five shares of stock in foreign corporations not paying taxes on all their property to the state of Kentucky, $25,000; fifteen bonds, $14,000; household effects, $2,000; library, $500; pictures, $500; jewelry, $250; all of which property was subject to assessment for state and county purposes for the year 1908, and no part of which was assessed by the assessor or any other assessing officer of the state or this county, at or on the date aforesaid, or for the year named. Plaintiff states that the assessment of said property at and on the date above mentioned was omitted from taxation and is yet omitted, and that

none of said property has ever been listed. Plaintiff states that all of the property of the defendant as herein mentioned, of the fair cash value as herein stated, was subject to assessment for state and county taxes for the year 1908, and that the plaintiff is now entitled to recover and receive of the defendant said state and county taxes on said property for the year named. Wherefore plaintiff prays that this court may hear and determine the amount, character, and value of the property omitted by the defendant from taxation for the year 1908, and assess same against said defendant at its fair cash value, estimated at the price the same would bring at a fair voluntary sale; that said order of assessment be certified by the clerk to the auditor of this state and the sheriff of this county; that the sheriff collect said taxes on said assessment, as other taxes are collected by him, together with the costs and a penalty or fee of twenty per cent. due the relator, Holland L. Anderson, revenue agent for the state at large. Plaintiff asks for all other proper relief.''

Thereafter the agent filed the following amended ''statement:''

''The plaintiff, commonwealth of Kentucky, by Holland L. Andeson, duly appointed, qualified, and acting revenue agent for the state at large, for amendment to its original statement and in order to make same more specific, definite, and certain, and to conform with the order of this court, states: That on September 1, 1907, the defendant, Henry Glover, was the owner of the following personal property, not set forth in the original statement, in such a specific way as to conform with the rule of this court: Accounts, $8,000; 200 shares of foreign railway stock, consisting of Pennsyl-

vania, Reading, Atchison, Illinois Central, Union
Pacific, Southern Pacific, Chicago, Milwaukee & St.
Paul, Southern Railway, Baltimore & Ohio, Northern
Pacific, $16,000; three hundred and fifty shares of
foreign industrial stock not paying taxes on same to
the state of Kentucky, to wit, American Car & Foun-
dry Stock, Amalgamated Copper, American Locomo-
tive, American Smelting & Refining, American Sugar
Refining Company, American Tobacco Company,
Pacific Mail, People's Gas, Pullman Palace Car, Vir-
ginia-Carolina Chemical, Pressed Steel Car, Westing-
house Electric and Western Union, $25,000; twenty-
five traction bonds, to wit, Rochester, St. Louis United
Railway, Springfield, Louisville Railway, New Orleans
Railway & Light, Pascagoula Street Railway, Seattle
Electric, $25,000; twelve city of Louisville bonds, eight
Louisville water bonds, twenty railroad bonds, to wit,
Pennsylvania, Reading, Atchison; Illinois Central,
Union Pacific, Southern Railway, Chicago, Milwaukee
& St. Paul, Southern Pacific, Baltimore & Ohio, and
Northern Pacific, $40,000; eighteen industrial bonds of
local corporations organized under the laws of the
state of Kentucky, $18,000; twenty-eight industrial
bonds of foreign corporations, to wit, American Car &
Foundry, Amalgamated Copper, American Locomo-
tive, American Smelting & Refining, American Sugar
Refining Comyany, American Tobacco Company,
Pacific Mail, People's Gas, Pullman Palace Car, Vir-
ginia-Carolina Chemical, Pressed Steel Car, Westing-
house Electric, and Western Union, $28,000. Where-
fore the plaintiff prays as in its original statement
heretofore filed.''

Appellee first moved that the Auditor's agent be
required to verify his statement. This motion was

overruled. He then moved that the statement be made more definite and certain as to the description of the property and its value. This motion was sustained, and, the agent declining to comply with the order of the court and further amend his statement, the proceeding was dismissed. He prayed and was granted an appeal to the circuit court. In the circuit court when the case came on to be heard, the motions which had been entered in the county court were renewed. The motion to verify was again overruled. The court found that certain items of the statement were set out with sufficient particularity and certainty, and overruled the motion as to these. The items so held to be sufficiently described were: Cash on hand, $600, household effects, $2,000, library, $500, pictures, $500, and jewelry, $250. As to the remainder of the items set out in the statement, the court held that their description was not sufficient, and he sustained the motion to require them to be set out with more particularity, both as to description and value. The agent declined to comply with the order, and a judgment was accordingly entered dismissing the proceeding as to all of the items save those which the court held to be sufficiently described. To test the correctness of the ruling of the chancellor upon these motions, this appeal is prosecuted.

The proceeding to assess this omitted property is in every sense a proceeding on behalf of the commonwealth, and the commonwealth is in each instance the real party in interest. This proceeding, as was expressly decided in the case of Commonwealth, etc., v. Ryan's Ex'rs, 104 S. W. 727, 31 Ky. Law Rep. 1070, is neither an action nor a special proceeding, as defined by the Code, but is simply a supplemental means

provided by the Legislature for assessing omitted property.   Commonwealth v. Adams Express Company, 124 Ky. 85, 98 S. W. 288.   The law makes it the duty primarily of the assessor to list the property of the taxpayer for taxation, and the statute points out the way in which the assessor shall proceed.   After the assessor has discharged his duties, it is the duty of the county board of supervisors to pass upon his work, and if, through personal knowledge or information brought to them, it is discovered that any property has not been listed for taxation, it is their duty to list it, and to cause the party against whom it is listed to be notified to appear before them upon a date fixed and show cause if he can, why the property should not be listed against him.

This board likewise has power to increase or decrease the valuation fixed by the assessor upon any property which, in their opinion, is valued too low or too high, and, in cases where this is done, the party affected is likewise notified to appear and show cause why the valuation of his property should not be increased or decreased.   Formerly any property which the vigilance of the assessing officer and the tax supervisors failed to discover went untaxed unless the sheriff of the county should thereafter discover same and cause it to be listed in the manner pointed out in the statutes, but, as the sheriff received practically no compensation for this character of service, he usually made no effort to discover property that had not been listed.   It was apparent that the assessor, in the hurry with which he had to proceed in order to complete his work within the time fixed, necessarily failed to list for taxation a great deal of property, and the county board of supervisors within the limited time

allowed for the discharge of their duties could not be expected to discover all of the omitted property or even a respectable part thereof; and, as the sheriff was offered no incentive to induce him to bestir himself in ferreting out omitted property, the Legislature saw the necessity of providing some adequate means for listing this great amount of property which annually escaped taxation. This necessity led to the amendment of the revenue law in 1874 (Acts 1873-74, p. 67, c. 524), whereby it was made the duty of the Auditor's agents as well as the sheriff to discover and list omitted property for taxation. This law gave ample power to the agent to list, but, as it provided no penalty as a reward for the agents' activity in searching out the omitted property, it practically failed of its purpose, and not until after the law was amended in 1880 (Acts 1879-80, p. 134, c. 1312) so as to give the agents a per cent. of the amount collected did the state realize any substantial benefits under this law. Even then the law was loosely drawn, and in many respects defective. Some of these defects were pointed out in court decisions, and others discovered in the efforts of the state to put the law ino practical working operation. These defects were from time to time cured by amendment until finally the legislative will was expressed in section 4241 of the Kentucky Statutes. Under this law the various agents in the counties throughout the state, together with the agents from the state at large, became very active and instituted many suits annually. Frequently they did not take the pains to discover whether any property of the taxpayer had, in fact, been omitted, but simply selected as the victims around whom to throw their inquisitorial dragnet the citizens of wealth and those

of large business interests and brought them into court for the purpose of discovering, if possible, that they had failed to list some of their property. These acts on the part of the Auditor's agents raised a storm of protest from citizens all over the state, for it not infrequently developed that there was no justification for the proceeding, and the Auditor's agent could offer in many instances no satisfactory explanation or reason for having brought the citizen into court, and subjected him to uncalled for annoyance and needless expense. This protest finally became so pronounced that it reached the legislative ear, and resulted in further amendment to the law, whereby the agent is prohibited from further use of the "dragnet" policy, and is required to describe the property sought to be taxed so that it can be identified, and also to state its fair taxable value, and he is further made personally liable for the cost of the proceeding where it is shown that it was instituted without right, and this is the law we have under consideration, to wit, section 4260 of the Kentucky Statutes. The last amendments to the laws were passed to put a curb or restraint upon the hasty, ill-advised, and, frequently, pernicious activity of the Auditor's agents, and will, when properly enforced, prevent the law's being used as an implement of oppression, and make it subservient to the ends for which it was enacted, to wit, compel the tax dodger to bear his just proportion of the public burden. This law is a comprehensive and complete system whereby ample provision is made for the assessment of every conceivable kind and character of property for taxation, and also for the collection of taxes on such property when so listed. The duties of the various assessing officers, to wit, assessor, tax

supervisors, Auditor's agents, sheriff, and county judge, where his acts are ministerial, are clearly defined. Their line of procedure is mapped out for them. In order to discharge their whole duty, they have but to follow the plain mandate of the law. No provision is made requiring either the tax supervisors or the sheriff to verify their demand upon the delinquent to show cause why his omitted property should not be assessed, and yet there is as much room for requiring it in their case as in that of the Auditor's agent. The reason for the rule is the same in each case. The statute does not require it. It is a well-recognized rule that, where a statute gives a right or provides a remedy, the manner provided in said statute whereby the right may be acquired must be strictly followed.

This principle is often recognized in proceedings under the statute regulating appeals from the probate of wills, proceedings in the county court for the purpose of opening, closing or altering roads, and in applications for license. In this class of cases it has been invariably held that the ends of the law are satisfied only by compliance with the provisions of the statute. We see no reason for not applying this principle to the statute under consideration. As above stated, this statute is a full, perfect, and complete law of the subject with which it deals, and directs in detail each of the successive steps that must be taken by the officers of the state in order to list omitted property and collect the taxes that may be found to be due thereon. In the discharge of his duties as set forth in this statute, the revenue agent acts in a purely ministerial capacity. His duties are to discover such property of the taxpayer as he has failed

to list and set forth the result of his discovery in a
"statement" which he files with the county judge, and,
so far as he is concerned, his duties are then at an
end, except that in proper time he is expected to pro-
duce in court the evidence by which the delinquent
property holder is to be shown to be the owner of
the property sought to be listed. As the statute does
not require the "statement" to be verified, we are of
opinion that the trial judge correctly held that it need
not be. In the absence of some statute requiring it,
no pleading would have to be verified. It is a matter
that appeals solely to the legislative discretion as to
what pleadings or proceedings in court shall be veri-
fied. In the instant case, the Legislature evidently
did not intend that the agent should be required to
verify his "statement," else provision in the act would
have been made therefor. This brings us to a con-
sideration of the second point raised, to wit, the right
of the taxpayer to require the Auditor's agent to
describe the property sought to be taxed with suffi-
cient particularity that it could be identified by the
court, and put a fair valuation on same.

As above stated, this provision was inserted in the
law for the purpose of preventing revenue agents
from proceeding against citizens without reasonable
grounds for believing that they had omitted certain of
their property. Under the provisions of this act, two
things must appear before the revenue agent can pro-
ceed with hope of success: First, that the taxpayer
owns certain property; and, second, that he has failed
to list it. Now, if the agent is not able to describe the
property, his information in regard thereto must be
very meager, and such information is in the language
of the statute too meager to authorize even a default

judgment. This statutory provision is not directory, as suggested by appellant, but it is mandatory, and was enacted to subserve a most useful purpose, and, while there is much reason in the argument of appellant that the "statement" should not be required to be more explicit than the schedule which the taxpayer is required to make out for the assessor, we are of opinion that this is a matter which properly addresses itself to the legislative department of government, and that neither revenue agents nor courts may properly concern themselves with either the wisdom or the policy of the statute. So long as the language of the act is plain and unambiguous, it is not subject to interpretation nor open to construction, but must be accepted and enforced as it is written. So accepting and applying its provisions to the case under consideration, we find that the trial judge held that certain items, to wit, "Cash on hand," "Household effects," "Library," "Pictures," and "Jewelry," were sufficiently described so as to enable the court to identify same, and, as the fair taxable value of each of these items was set out, the court held, and properly so, that the "statement" as to these items conformed to the requirements of the law, and he overruled appellee's motion that the "statement" in regard to such be made more explicit. Of course, "cash" could not be described with a greater degree of particularity than it was. "Household effects" are universally understood to mean all the furnishings of one's residence, and the words "library," "pictures," and "jewelry" have likewise a well-defined meaning when applied to those not engaged in the book, picture, or jewelry business. As "household effects' means the furnishings of one's residence, so the word "library"

means such books or works of literature, science, art, or business as one may have in his residence or office. The term "pictures" includes all of the paintings, drawings, and sketches that adorn the walls of one's residence or office building; and the word "jewelry" includes the rings, pins, and other ornaments worn by the taxpayer, his wife, and other members of his family dependent upon him, and for whose taxes he is responsible.

As to the items of the "statement" which the trial judge rejected, we deem it but necessary to state that, as the descriptions wholly failed to meet the requirements of the statute, the trial judge correctly held that they were insufficient. We are at a loss to understand how the agent could charge that appellee was the owner of accounts of a stated value, and not be able to state from whom such accounts were due and owing, and the amount owing by each. The fact that he refused to so state was evidence that he could not do so, and was simply pursuing the "dragnet" policy which the Legislature sought to condemn by the enactment of the very law under which appellant was proceeding. The same is true as to the items in the "statement" of "notes, secured and unsecured." The items wherein it is sought to charge appellee with the ownership of 200 shares of stock in foreign railways, consisting of Pennsylvania, Reading, Atchison, Illinois Central, Union Pacific, Southern Pacific, Chicago, Milwaukee & St. Paul, Baltimore & Ohio, and Northern Pacific, of the value of $16,000, and 350 shares in foreign industrial corporations, consisting of American Car & Foundry Stock, Amalgamated Copper, American Locomotive, American Smelting and Refining, American Sugar, American

Tobacco Company, Pacific Mail, People's Gas, Pullman Palace Car Company, Virginia-Carolina Chemical, Pressed Steel Car, Westinghouse Electric, and Western Union, of the value of $35,000, and 25 traction bonds, to wit, Rochester, St. Louis United Railway Company, Springfield, Louisville Railway Company, New Orleans Railway & Light, Pascagoula Street Railway, Seattle Electric, of the value of $25,000, and 20 railroad bonds, consisting of Pennsylvania, Reading, Atchison, Illinois Central, Union Pacific, Southern Pacific, Chicago, Milwaukee & St. Paul, Southern Railway, Baltimore & Ohio, and Northern Pacific of the value of $40,000, and 18 industrial bonds of local corporations organized under the laws of Kentucky, of the value of $18,000, and 28 industrial bonds of foreign corporations, consisting of American Car & Foundry, Amalgamated Copper, American Locomotive, American Smelting & Refining, American Sugar Refining Company, American Tobacco Company, Pacific Mail, People's Gas, Pullman Palace Car, Virginia-Carolina Chemical, Pressed Steel Car, Westinghouse Electric and Western Union, of the value of $28,000, are very objectionable, and bear strong evidence that appellant was not proceeding in good faith along statutory lines, but was simply attempting to discover if appellee was, in fact, the owner of any of the many properties set out in these items in his "statement." It was the duty of the agent to set out in the "statement" the number of shares which appellee owned in each of the corporations and the fair cash value of each. Any description short of this fails to comply with the requirements of the statute, and, as heretofore stated, this provision of the statute as to the descrip-

tion of the property and its fair cash value must be complied with before any judgment can be entered declaring the property subject to taxation. We do not mean to hold that the agent would be required to give the serial numbers of the certificates of stock in the various corporations, but simply that he should state the number of shares in each and the fair cash value thereof. If he is not possessed of such information as will enable him to do this, he is without authority of law to proceed. His business is to have the supposed delinquent taxpayer cited to appear and show cause why he should not list certain property which he is able to describe with sufficient particularity for it to be identified by the court, and not to hold a court of inquisition for the purpose of discovering whether or not a taxpayer may have omitted some of his property which should have been listed for taxation. When revenue agents proceed in strict conformity to the requirements of the statute, the odious and objectionable features of the act will be removed, and a proper discrimination made and observed between the tax dodger and the citizen who has fairly listed his property. The law in its present form is the result of years of experience in the practical workings of our revenue laws bearing upon this subject. They are ample to reach and subject the property of the citizen to taxation, and it is unnecessary that the provisions of this law be extended beyond their plain terms to subserve the ends of justice.

The trial judge having entertained and expressed these views, his judgment is affirmed.