## C. E. CORKERY v. THE SECURITY FIRE INSURANCE COM-PANY, Appellant.

**Insurance:** NOTICE TO AGENT.  Where an insurance company
defended an action on the ground that when the policy was issued
there was, contrary to its provisions, a chattel mortgage on the
property insured, evidence that the plaintiff told the defendant's
agent to make the policy payable to the mortgagee, as his claim
might appear, as in a former policy, of which the one in suit was
a renewal, was admissible to show that the agent had actual
knowledge of the mortgage when he delivered the policy.

SAME.  Evidence that plaintiff told defendant's agent to go to the
office of another company, in which plaintiff's goods were insured,
and make the policy correspond with the one there recorded, and
that said agent examined the record of the existing policy, which
recited: "Mortgage Clause. Loss, if any, payable to M,"—ren-
ders the entry competent on the issue as to the agent's knowledge
that the property insured was mortgaged to M, though such entry
referred to a former mortgage, which had been satisfied.

**Concurrent Insurance.**  Busses kept by insured in the building
described in the policy, are covered by the phrase following the

enumeration of carriages, buggies, etc., as the subjects of insurance, "and all such goods usually kept in a livery barn and sale stable," but goods "held in trust, or on commission," are not so covered by said phrase.

SAME: *Contribution.* That a policy of insurance covers property not covered by another policy, as well as that covered thereby, does not deprive it of the character of concurrent insurance, within a provision for concurrent insurance in the other policy, *where the contribution clause in the latter contemplates an adjustment between policies not identical as to the subject-matter covered.*

PROOF OF LOSS: *Conclusiveness.* Insured is not concluded as to the amount of his loss by the statement in that regard made in his proofs of loss, where the company refuses to pay upon the basis of that amount.

PLEA AND PROOF. In an action on a policy of insurance, defendant's denial of an allegation that the fire was without fault or negligence on plaintiff's part, does not raise an issue as to the cause of the fire, so as to admit of testimony concerning the amount of plaintiff's indebtedness at the time of the loss, for the purpose of proving that the fire was purposely set.

Close of Case: DISCRETION AS TO FURTHER TESTIMONY. The court may allow plaintiff to introduce additional testimony after closing his case, under McClain's Code, section 4006, giving the court discretion to allow further testimony in such case, "to correct an evident oversight or mistake," where it is apparent that the omission sought to be supplied was in fact an oversight, although there is no express statement to that effect.

Evidence: IRRELEVANCY: *Notice.* Where plaintiff claimed that he notified the agent who issued the policy that there was a mortgage on the property insured, and requested him to provide for it in the policy, but that the agent failed to do so, an instruction that they "should consider the fact that plaintiff retained said policy without having an indorsement thereon as to said mortgage, in determining whether he notified" the agent of its existence, was properly refused.

*Appeal from Plymouth District Court.*—HON. SCOTT M. LADD, Judge.

TUESDAY, OCTOBER 20, 1896.

ACTION to recover upon a policy of insurance of certain personal property, in a certain building, against lost or damage by fire. Plaintiff alleges the

issuance of the policy by the defendant to him; the loss of the property by fire, without fault or negligence on his part; the value of the property destroyed; that proofs of the loss, and request for arbitration, were made as required in said policy; and that defendant refuses to pay said loss. Plaintiff asks judgment for one thousand dollars, with interest. Defendant answered admitting the execution of the policy; that the building was burned; that plaintiff made a pretended account of the loss, and a request for arbitration; and that defendant has refused to pay any sum whatever on account of said loss. Defendant denies that the fire occurred without fault or negligence on the part of the plaintiff, denies that the property was of the value alleged, and denies that the plaintiff has sustained damages to the amount claimed. The defendant alleges, as a complete defense, that said policy provides that if at the date thereof a mortgage or other lien existed, or be thereafter executed, upon the property covered by said policy, it should become void and of no effect; that plaintiff obtained said policy through one Rudolph Koehler, defendant's agent at Le Mars, Iowa; that prior thereto, to-wit, about the fifteenth day of June, 1893, plaintiff executed and delivered to one Moreton a chattel mortgage upon the property covered in whole or in part by said policy, which mortgage continued to exist, in full force and unsatisfied, at the date of said fire, and for a long time thereafter; that the execution, delivery and existence of said mortgage were unknown to defendant and its said agent at the date of said fire, and for some time thereafter. The defendant alleges, as further complete defense, that by the terms of said policy it is stipulated that it should be void and of no effect, if, without permission therefor in writing thereon, the assured should then have, or thereafter make or procure, any other contracts of insurance,

whether valid or not, on property covered in whole or in part by said policy; that the only stipulation with reference to other insurance in writing, upon said property was written in said policy, to-wit: "$3,000.00 additional concurrent insurance permitted." Defendant alleges in separate paragraphs, and each as a separate defense, that plaintiff took out four other policies of insurance, covering the property insured in this policy, and other property held in trust, or on commission, which policies continued in force at the time of said fire, and that the same were not concurrent with this policy, wherefore, defendant alleges, that this policy is rendered void and of no effect. Plaintiff, in reply, admits that this policy was obtained through Rudolph Koehler, defendant's local agent; admits the execution of said mortgage, and that the same was unsatisfied at the date of said fire; but alleges that, before, and at the date of the execution of said policy, Koehler and the defendant knew that said notes and mortgage had been executed and were unpaid, and, while in possession of such knowledge, caused said policy of insurance to be executed to plaintiff; that neither before, nor at the date of the execution of said policy, did defendant, or its said agent, make inquiry of plaintiff with respect to said mortgage, or any other mortgage, nor did plaintiff make any false statement with respect to said mortgage, or conceal from the defendant the existence of the same; that plaintiff did not make verbal or written application to the defendant for said policy, nor make any representation to it whatever, and that said mortgage was duly filed for record on the sixteenth day of June, 1893, wherefore plaintiff contends, that defendant is estopped from alleging said mortgage as a defense. The case was tried to a jury, and a verdict and judgment rendered in favor of the plaintiff for one thousand dollars. Defendant appeals.—*Affirmed.*

*J. H. Struble* for appellant.

*Argo, McDuffie & Reichmann* and *I. T. Martin* for appellee.

GIVEN, J.—I.   Following the order of the trial, we first inquire as to errors assigned and argued upon the admission and rejection of evidence.   Plaintiff, having testified that the policy in suit was executed in renewal of a former policy, was permitted to state, over defendant's objection, that he told Mr. Koehler to make this policy payable to Mr. Moreton, mortgagee, as his claim might appear in case of loss; that he told him to renew the policy, and to put the Moreton mortgage in the same as it was before.   Appellant seems to understand the evidence objected to as relating to the former policy, and to a former mortgage to Mr. Moreton that had been satisfied.   We think it relates to the policy in suit, and the mortgage referred to in the answer, and was admissible to show that Mr. Koehler had actual as well as record knowledge of that mortgage when he delivered this policy.   One of the policies referred to in the answer was issued by the Oakland Home Insurance Company, through one Dun, its local agent.   Mr. Kilburg, an employe in Mr. Dun's office, testified that he wrote said policy, and made the entries thereof in Mr. Dun's record of policies, which record he produced and identified.   He also testified that plaintiff told him that Mr. Koehler would come and get a copy of said record of that policy; that some time in the summer of 1892, Mr. Koehler did come, and he showed him said entry in the book.   Said entry shows, among other things: "Mortgage Clause.   Loss, if any, payable to H. J. Moreton."   Defendant objected to this entry as incompetent, which objection was overruled. The entry having been read by Mr. Koehler, it was

competent because of what it contained as tending to prove knowledge on his part of the existence of the Moreton mortgage. It is argued that as this entry was of a policy issued April 13, 1892, and the mortgage in question was not executed until June 15, 1893, the entry must refer to the former mortgage that had been satisfied. This may be conceded, but the entry was competent because of plaintiff's evidence that he had told Mr. Koehler to go to Dun's office and make this policy correspond with theirs; to make it payable to Moreton as his claim might appear.

Defendant sought to show upon examination of the plaintiff, and by the record of certain mortgages, the amount of plaintiff's indebtedness at the time of the fire, for the purpose of showing "that the fire wasn't in good faith; that it wasn't an accidental fire." There was no issue as to the cause of the fire. Defendant's denial that it was without fault or negligence on plaintiff's part does not imply that plaintiff purposely caused the fire. There is no such issue, and the evidence was properly excluded. We discover no error in the rulings on taking the evidence.

II. Plaintiff rested without introducing any evidence in support of his plea of estoppel set up in his reply as to said mortgage. Defendant moved for a verdict because of the absence of such testimony. After argument and recess, and after the court had announced that the burden was upon the plaintiff to show the circumstances relied upon as an estoppel, plaintiff's counsel asked leave "to introduce some other testimony relating to the matter," to which defendant objected, and the objection was overruled. Defendant contends that there was no showing that the further testimony was "to correct an evident oversight or mistake," and that it is only in such cases that the court has, under section 4006, McClain's Code, discretion to allow further testimony.

That the omission to introduce this testimony was an oversight, is evident from the record. Much time and care had been taken in introducing plaintiff's evidence that preceded, and, although it was not said in words that the omission was an oversight, it was evidently so; and the court acted within the discretion given it, in permitting plaintiff to introduce further testimony.

III. The policy in suit is upon the following of plaintiff's property: "Upon his carriages, buggies, wagons, sleighs, and parts thereof, harness, saddles, bridles, blankets, robes, whips, and all such goods usually kept in a livery barn and sale stable, all while contained in the two-story frame, shingle-roof livery barn situated on lots nine (9) and ten (10), block thirteen (13), Le Mars, Iowa." Said policy contains the following: "This policy shall be void and of no effect if, without permission therefor in writing hereon, the assured shall now have, or hereafter make or procure, any other contract of insurance, whether valid or not. on property covered in whole, or in part, by this policy." "Contribution. This company shall not be liable for a greater proportion of any loss than that which the amount hereby insured shall bear to the whole sum for which the assured shall have policies, or contracts of insurance on said property, whether the same be specific, or by general or floating policies, or subject to clauses of average or co-insurance, or whether such policies, or contracts, be valid or not, or by solvent, or insolvent, insurers." "$3,000,00 additional concurrent insurance permitted." It is shown by stipulation that plaintiff had and procured other policies of insurance against loss by fire, as follows: In the Liverpool, London & Globe, August 22, 1893, to August 22, 1894, "$1,000 on his busses, carriages, buggies, wagons, sleighs, cutters, harness, saddles, bridles, blankets,

robes, whips, and all parts of said goods usually in a livery and sale stable, carriage fixtures, and trimmings, also goods held in trust, or on commission, tools and appliances used with barn, all while contained in the two-story frame, shingle-roofed barn, and its additions thereto, situated on lot No. 9, and a portion of the right of way of the Illinois Central R. R., in block 13, Le Mars, Plymouth county, Iowa;" also upon the same property, in the London Ins. Corporation of England, for five hundred dollars, April 26, 1893, to April 26, 1894, and in the Royal Ins. Co. of England, for one thousand dollars, April 22, 1893, to April 22, 1894; also a policy in the Oakland Home Ins. Co., for five hundred dollars, April 13, 1893, to April 13, 1894, "on his busses, carriages, buggies, wagons, sleighs, cutters, harness, saddles, bridles, blankets, robes, whips, and all parts of said goods usually kept in livery and sale stables, carriage fixtures and trimmings; also goods held in trust or on commission, tools and appliances used in a livery stable,—all while contained in the two-story frame, shingle-roofed barn, and its additions thereto, situated on lot 9, in block 13, and on right of way of Illinois Central R. R., Le Mars, Iowa." The court instructed the jury that, "under the evidence in this case, each policy covers identical property, and hence are all concurrent." Defendant complains of this instruction, and that the court did not submit its defenses, based upon said other insurance, to the jury. It is contended, that these policies are not concurrent, for that they cover property not included in the one in suit, namely, "busses and goods held in trust or on commission." The policy in suit is upon "his [plaintiff's] carriages, * * * and all such goods usually kept in a livery barn and sale stable." This, we think, includes plaintiff's busses kept in the building described, but does not include "goods held

in trust or on commission." Plaintiff testifies that at and before the fire he was taking care of other people's horses and vehicles in his barn, but surely this property was not held in trust or on commission, within the meaning of these policies. Neither party understood the plaintiff as holding insurance on such property. Plaintiff, on being inquired of as to the value of the property claimed to have been destroyed, and whether the same was new when purchased, stated, "Why, I was agent for some companies in selling new goods." He was asked, as to certain articles, "You were dealing in those articles, many of them, on account, were you?" to which he answered, "I had account goods." This answer was in connection with inquiries as to whether he purchased for cash or on credit, and relates to purchases, and not to goods on commission. There is no evidence that any such goods were lost, or included in the claim of the plaintiff. Defendant claims that these policies are non-concurrent, because they do not specify the amount of insurance, separately, on the goods held in trust or on commission. It is conceded that, if they specified the sum thereof applicable to the property covered by the policy in suit, they would be concurrent; but it is insisted that, as they are, an adjustment cannot be readily made. The provision as to contribution provides for such adjustment, and the fact that it may not be so easily made as if the policies each covered only the same property, is no reason for holding them to be non-concurrent. We have seen that plaintiff is not claiming for such goods, but the question remains whether the fact that these subsequent policies cover additional property, namely, goods held in trust or on commission, "renders them non-concurrent, and a violation of the policy in suit." "Concurrent" is defined by Webster as "acting in conjunction, agreeing in the same act, contributing to

the same event or effect, co-operating, accompanying, conjoined, associate, concomitant, joint and equal, existing together and operating on the same objects." Taking the provisions of this policy quoted above together, and it seems clear that it was not intended that the additional insurance authorized should not include other property. The provision as to contribution precludes such a conclusion. The term "concurrent," as used in this policy, was used in the sense of contributing to the same event or effect, but not jointly and equally. Defendant cites *Ogden v. Insurance Company*, 50 N. Y. 388. In that case, "other insurance was permitted," not other concurrent insurance, as in this. It was held that other policies covering the same property as that covered by the defendant's policy and other property were "other insurance." That policy contained a provision that, "in case of loss the insured shall not recover on this policy any greater proportion of the loss or damage sustained to the subject insured than the amount hereby insured shall bear to the whole amount insured on the said property." The rule of contribution announced is "that for the purpose of apportioning the loss in case of over insurance, where several parcels are insured together by one policy for an entire sum, and one of the parcels is insured separately by another policy, the sum insured by the first-mentioned policy is to be distributed among the several parcels in the proportion which the sum insured by that policy bears to the total of all the parcels." The loss in that case being total, and the aggregate amount of the insurance not being greater than the value of the property destroyed, it was held that the plaintiff was entitled to recover the full amount of the policy sued upon. In this case, the loss is total, and we think the value of the property destroyed is equal to, if not greater than, the aggregate amount of all the policies. The

other insurance, in this case, was such as was expressly permitted, namely, concurrent, and therefore, there was no error in so instructing the jury.

IV. Defendant, maintaining that it is established that plaintiff had the policy in suit in his possession from and after its delivery, without any indorsement in writing waiving the clause as to mortgages, asked an instruction, which was refused, to the following effect: That it was the duty of the plaintiff to have examined said policy, and that he is presumed to have examined it; that no fraud, mistake, or omission, on the part of defendant in the issuance and delivery of said policy being pleaded, the jury should consider the fact that plaintiff retained said policy, without having an indorsement thereon as to said mortgage, in determining whether he notified defendant's agent of the existence of said mortgage, or requested him to write anything in said policy with reference thereto prior to the fire. There was no error in refusing this instruction, nor the similar instruction asked by defendant, numbered five. The principal dispute as to said mortgage was whether defendant's agent had omitted to provide therefor in the policy. Plaintiff's claim is that, though notified of the mortgage, and requested to provide for it in the policy, he omitted to do so. This alleged mistake and omission was in issue, and the jury was sufficiently instructed as to the facts.

V. Defendant's further contention is that the verdict is not sustained by the evidence, and that it is excessive. We think that under the evidence and instructions, the jury was warranted in finding for the plaintiff. The verdict is for one thousand dollars. The value of the property was the subject of extended inquiry, and that issue was submitted to the jury under proper instructions,

Defendant contends that plaintiff is concluded by the statement of the amount of his loss as made in his proofs of loss, namely, three thousand, six hundred and eighty-three dollars and eight cents, and that the verdict, being for more than defendant's share of that amount, is excessive. As defendant refused to pay upon the basis of that amount, the plaintiff is not concluded thereby, but may recover in this action upon the basis of the actual value of the property destroyed.

The foregoing disposes of all the questions urged in argument, and, as we find no errors prejudicial to the appellant, the judgment of the district court is AFFIRMED.